UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                            :
SKENDER ALIJAJ,                         :
                              Plaintiff,   :
                                              :
                      -v-                       :             17-CV-1887 (VSB)

**OPINION & ORDER**

WELLS FARGO,

                                    Defendant.

--------------------------------------------------------- X

Appearances:

Appearances:

Skender Alijaj
Middletown, New Jersey
*Pro se Plaintiff*

Colleen P. Tandy
Fisher & Phillips, LLP
Murray Hill, New Jersey
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Skender Alijaj ("Plaintiff") brings this action against Defendant Wells Fargo ("Defendant"),[1] alleging discrimination on the basis of national origin and religion and retaliatory termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* Before me is Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56. Because Plaintiff fails to establish a prima facie case for discrimination or retaliation under Title VII or the ADEA,

---

[1] Defendant identifies itself as "Wells Fargo Bank, N.A." (Def.'s Mem. 1.) "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, filed November 29, 2018. (Doc. 36.)

1

Defendant's motion for summary judgment on those claims is GRANTED. However, Defendant's motion is DENIED to the extent that it seeks dismissal of Plaintiff's complaint because Defendant's moving papers failed to address any whistleblower retaliation claims that Plaintiff arguably alleges.

I. **Background**

Plaintiff, who was born in Kosovo and identifies as Alabanian, moved to the United States when he was eight years old. (Pl.'s 56.1 Resp. ¶ 11.)[2] Plaintiff's religion is Islam. (*Id.* ¶ 12.) Plaintiff began working at Wells Fargo in September 2011 when he was 46 years old. (*Id.* ¶ 13.) Plaintiff began his employment in the Equity Derivatives Group as a Product Controller, and he remained in that position until February 2015. (*Id.* ¶¶ 14, 16.) On January 22, 2015, on the recommendation of one of his supervisors, Plaintiff transferred to the Securities Lending Group, also as a Product Controller, and the transfer became effective in February 2015. (*Id.* ¶¶ 36–40.) After negative performance reviews and both informal and formal warnings, (*see id.* ¶¶ 46–108), Defendant terminated Plaintiff's employment on November 9, 2015, (*id.* ¶ 132).

II. **Procedural History**

Plaintiff commenced this case by filing a pro se Complaint for Employment Discrimination on March 15, 2017 ("Complaint"), alleging employment discrimination under Title VII and the ADEA. (Doc. 1.) On June 30, 2017, after unsuccessful mediation sessions, Defendant filed its answer. (Doc. 10.)

On November 29, 2018, Defendant filed a motion for summary judgment. (Doc. 35.) In support of the motion, Defendant filed a memorandum of law, (Doc. 36), an affidavit with

---

[2] "Pl.'s 56.1 Resp." refers to Plaintiff's Responses to Defendant's Local Civil Rule 56.1 Statement of Material Facts, filed December 28, 2018. (Doc. 42.) I refer to this document because it consolidates Defendant's Local Civil Rule 56.1 Statement of Material Facts ("Def.'s 56.1), (Doc. 38), and Plaintiff's responses. Unless otherwise noted, Plaintiff does not dispute the facts set forth in the paragraphs cited.

exhibits, (Doc. 37), and a Local Rule 56.1 statement, (Doc. 38). Defendant also completed a notice to Plaintiff, who is pro se, regarding the obligations of a litigant who opposes summary judgment, as required by Local Rule 56.2. (Doc. 40.) On December 28, 2018, Plaintiff filed a response to Defendant's Local Rule 56.1 statement, which attached several documents as a single exhibit. (Doc. 42.) Plaintiff did not submit a memorandum in opposition to the motion. Defendant filed a reply memorandum on January 18, 2019. (Doc. 45.)

### III. Legal Standards

#### A. *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### B. *Pro Se Litigant*

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers"

4

(internal quotation marks omitted)); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se litigants." (internal quotation marks omitted)).

However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV. Discussion

### A. *Discriminatory Termination*

#### 1. Applicable Law

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under Title VII, discrimination claims based on race, color, religion, and national origin are analyzed under the familiar three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (religious discrimination claims under Title VII); *Risco v. McHugh*, 868 F. Supp. 2d 75, 99–100 (S.D.N.Y. 2012) (race and color

5

discrimination claims under Title VII); *Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08 Civ. 5454(RJS), 2011 WL 4530193, at *3 (S.D.N.Y. Sept. 30, 2011) (race discrimination claims under Title VII and the NYSHRL); *Kumar v. N.Y.C. Sch. Constr. Auth.*, No. 10 Civ. 3559(PKC)(FM), 2011 WL 5929005, at *6–7 (S.D.N.Y. Nov. 29, 2011) (national origin discrimination claims under Title VII and the NYSHRL). This framework also "applies to claims of age discrimination under the ADEA." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).

Under the *McDonnell Douglas* framework, the employee bears the burden of setting forth a prima facie case of discrimination. *See* 411 U.S. at 802. To state a prima facie case, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *See id.* The "burden of establishing a *prima facie* case is *de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases). To establish an inference of discrimination, a plaintiff must often rely on indirect evidence of discrimination. *See Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991) ("A victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.").

If a plaintiff successfully presents a prima facie case of discrimination, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment action. *See Abdu-Brisson*, 239 F.3d at 466, 468–69. The defendant's burden at this stage is also "light," *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998), and the employer "does not need to prove by a preponderance of the evidence that the rationale was not discriminatory, but must present a clear explanation for the action," *Pathare v. Klein*, No. 06-

Civ. 2202(LTS)(DCF), 2008 WL 4210471, at *4 (S.D.N.Y. Sept. 12, 2008). This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Although the burden of production shifts, "the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997).

The burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the proffered reason is a pretext for discrimination. *See United States v. City of New York*, 717 F.3d 72, 102 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008). However, a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) ("[A] plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus.").

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). "To get to the jury, 'it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *St. Mary's*, 509 U.S. at 519), *cert. denied*, 540 U.S. 811 (2003); *see also Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000) (affirming summary

judgment in favor of defendant where plaintiff failed to present evidence upon which a reasonable jury could conclude that age was a "determinative factor" in adverse employment action). "Though the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' it may often be carried by reliance on the evidence comprising the prima facie case, without more." *Cronin*, 46 F.3d at 203 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

### 2. Application

Defendant concedes that Plaintiff, as a European-born, Muslim person who is over age 40, is a member of a protected class, and that he suffered an adverse employment action—the first and third prongs of a prima facie case. (*See* Def.'s Mem. 6.) Defendant argues that Plaintiff fails to meet the second prong of a prima facie case because he did not perform his job duties satisfactorily, and that he fails to meet the fourth prong because he cannot identify any circumstances giving rise to an inference of discrimination. (*Id.*) I address each argument in turn.

In support of its assertion that Plaintiff cannot show that his "performance was even remotely satisfactory," Defendant relies on several emails exchanged among Plaintiff's supervisors and various performance evaluations completed by Plaintiff's supervisors. (*See* Def.'s Mem. 7 (citing, for example, Def.'s 56.1 ¶ 79).)[3] These documents are offered to prove the truth of the matters asserted therein (i.e., that Plaintiff's job performance was not satisfactory). Therefore, they are hearsay, Defendant has not demonstrated their admissibility,

---

[3] "Def.'s 56.1" refers to Defendant's Local Civil Rule 56.1 Statement of Material Facts, filed November 29, 2018. (Doc. 38.)

8

and as a result they may not be relied upon to demonstrate that there is no dispute of material fact. *See* Local Rule 56.1(d) (requiring any statement made by a movant to be "followed by citation to evidence which would be admissible"); *see also Elghourab v. Vista JFK, LLC*, No. 17-cv-911 (ARR) (ST), 2018 WL 6182491, at *2 (E.D.N.Y. Nov. 27, 2018) (evaluating a motion for summary judgment and declining to consider an email critiquing an employee's work and a performance evaluation conducted by the employee's supervisor, on the grounds that they were hearsay and were not admissible under any exception to the hearsay rule). Moreover, it is not clear from Defendant's moving papers whether the issues discussed in the performance evaluations are better characterized as "misconduct" or as an indication that Plaintiff did not possess the "minimal qualification to perform [his] job." *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (citation omitted). However, I need not resolve this question, because Plaintiff cannot identify any circumstances giving rise to an inference of discrimination, and so he fails to make out a prima facie case of discrimination.

Plaintiff testified at his deposition—and he concedes in his response to Defendant's Local Rule 56.1 statement—that no person at Wells Fargo ever made comments to him about his national origin. (*See* Pl.'s 56.1 Resp. ¶ 146.) Plaintiff offers no evidence to dispute facts established at his deposition: (1) the only basis for his national origin discrimination claim is that two people who were also of European descent (a "Serbian woman" and an "Italian man") left the Equity Derivatives Group at about the same time as Plaintiff; (2) Plaintiff does not know the performance ratings for either of those two people; (3) Plaintiff does not know the reason that one of the two people left; (4) the other person transferred to a different department and remained employed at Wells Fargo at the time Plaintiff's employment was terminated; and (5) Plaintiff does not know whether either person was born in the United States, or ever believed

9

they were discriminated against based on their respective national origins. (*See, e.g.*, *id.* ¶ 141 (stating that "Plaintiff knows that most times people are pushed out not because of performance but for covert discriminatory animus" without citing any evidence); *id.* ¶ 148 (stating that "Plaintiff never heard any comments made openly in his presence but who knows what is said behind your back" without citing any evidence).) Plaintiff's speculation about the reasons these two people left the Equity Derivatives Group "is insufficient to defeat a motion for summary judgment." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006).

Plaintiff also concedes that no person ever made comments to him about his religion, and that the supervisors responsible for the termination of his employment were not aware of his religion. (*See* Pl.'s 56.1 Resp. ¶¶ 147–53.) The only circumstance Plaintiff identifies that arguably supports an inference of discrimination based on religion is an interaction he had at a company party with George Pawlush, the head of the Equity Derivatives Group, at a December 2013 holiday party. (*See id.* ¶ 154.) Plaintiff testified that Pawlush asked Plaintiff why he was not drinking any alcohol. (Pl.'s Dep. 53:15-23.)[4] Plaintiff responded that he did not drink alcohol, and Pawlush asked if he was Muslim, and Plaintiff responded, "[Y]es, I am Muslim." (*Id.* at 53:24-54:5.)

To determine whether Pawlush's question about Plaintiff's religion is evidence of discriminatory intent in Plaintiff's termination, I consider the following factors: "(1) who made the remark, *i.e.*, a decision-maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which

---

[4] "Pl.'s Dep." refers to the transcript of Plaintiff's deposition, dated April 12, 2018, and filed on November 29, 2018 as Exhibit B to the Certification of Colleen P. Tandy. (Doc. 37-2.)

the remark was made, *i.e.*, whether it was related to the decision-making process." *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 637 (S.D.N.Y. 2005). Although Pawlush was Plaintiff's supervisor at some point during Plaintiff's employment, he was not involved in the decision to terminate Plaintiff's employment, (Pl.'s 56.1 Resp. ¶ 131), and Plaintiff concedes that he transferred out of Pawlush's division nearly a year before the termination of his employment, (*id.* ¶¶ 39–40, 132).[5] The fact that Pawlush—the only person Plaintiff claims ever even inquired about his religion—was not involved in nor did he play any meaningful role in the decision to terminate Plaintiff's employment, (*id.* ¶ 131), is fatal to establishing an inference of discrimination based upon Pawlush's interaction with Plaintiff at the company party, *see Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450–51 (2d Cir.1999) (affirming summary judgment where record was devoid of evidence showing that the individual who allegedly harbored discriminatory animus played any "meaningful role" in the adverse-action decision). Moreover, the content of Pawlush's remark—merely asking about a person's religion, without any additional statements or circumstances indicating or suggesting a bias against that religion—would not permit any reasonable juror to conclude that the remark was discriminatory. Finally, nothing about the context in which the remark was made—a company party in December 2013, almost two years prior to the termination of Plaintiff's employment—suggests that it played any role in the decision-making process that resulted in the termination of Plaintiff's employment. (*See* Pl.'s 56.1 Resp. ¶¶ 132, 154.) Accordingly, I find that Pawlush's question, which was not accompanied by any "other indicia of discrimination," and was made almost two years before the

---

[5] Plaintiff appears to suggest that Pawlush was in some way involved in the termination of Plaintiff's employment. In support of this argument, Plaintiff points out that Pawlush was copied on an email on the same day that Plaintiff was given a written informal warning. (Pl.'s 56.1 Resp. ¶ 131.) Pawlush was not copied on the email regarding Plaintiff's informal warning, and Plaintiff does not demonstrate how the email Pawlush was copied on bears any relationship to the termination of his employment. I therefore consider Plaintiff to have conceded that Pawlush did not play a meaningful role in the termination of Plaintiff's employment.

termination of Plaintiff's employment, is at most a "stray remark" with no causal connection to Plaintiff's termination. *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015) (summary order) (citation omitted).

Plaintiff testified that the only basis for his claim of age discrimination is that he "was replaced by a younger person." (Pl.'s Dep. 212:15-19.) However, Plaintiff concedes that he does not know if the younger person who allegedly replaced him even had the same job responsibilities as Plaintiff, (*id.* at 212:8-14), and Plaintiff's "unsupported belief that [this younger] employee[] [was] hired to replace him does not create an inference of discrimination," *Goonewardena v. N.Y.S. Workers' Comp. Bd.*, No. 09 Civ. 8244 (RA)(HBP), 2016 WL 7439414, at *14 n.13 (S.D.N.Y. Feb. 9, 2016), *report and recommendation adopted sub nom. Goonewardena v. State of N.Y. Workers Comp. Bd.*, 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016).

I find that because Plaintiff does not identify any circumstances giving rise to an inference of discrimination on the basis of national origin, religion, or age, he fails to establish a prima facie case of discrimination. Accordingly, Defendant's motion for summary judgment on Plaintiff's discriminatory termination claims under Title VII and the ADEA is granted.

**B.** *Title VII Retaliation*

**1. Applicable Law**

Plaintiff's retaliation claim is similarly analyzed under the *McDonnell Douglas* burden-shifting framework. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). To establish a prima facie case of retaliation under this framework, a plaintiff must show "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the

adverse employment action." *Id.* (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)). Like a discrimination claim, if the plaintiff has made a prima facie case, the burden shifts to the defendants to show a legitimate, non-discriminatory reason for the adverse action. *Pena-Barrero v. City of New York*, No. 14-CV-9550 (VEC), 2017 WL 1194477, at *17 (S.D.N.Y. Mar. 30, 2017) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). If defendants meet that burden, the plaintiff must then offer evidence from which a jury could conclude that the non-discriminatory reasons were pretext for unlawful retaliation. *See Witkowich v. U.S. Marshals Serv.*, 424 F. App'x 20, 22 (2d Cir. 2011) (summary order) (citing *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)). In doing so, the plaintiff must show that the protected activity "was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 363 (2013).

### 2. Application

Plaintiff fails to establish a prima facie case for retaliation under Title VII because nothing in the record, including Plaintiff's own testimony, supports a finding that he ever engaged in protected activity. A plaintiff engages in protected activity "even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law," *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (internal quotation marks omitted), and the complaint is "sufficiently pointed to be reasonably understood as a complaint of discrimination," *McManamon v. Shinseki*, No. 11 Civ. 7610(PAE), 2013 WL 3466863, at *11 (S.D.N.Y. July 10, 2013) (citation omitted).

Plaintiff does not meaningfully dispute that, although he raised several internal complaints during his employment at Wells Fargo, he never informed any person, either verbally

13

or in writing, that he felt discriminated against on the basis of national origin, religion, or age. (*See* Pl.'s 56.1 Resp. ¶¶ 56, 92, 110–11, 113, 116, 123.)[6] Plaintiff's complaints did not in any way refer to his national origin, religion, or age; therefore Defendant "could not reasonably have understood that []he was complaining of conduct prohibited by Title VII" and the ADEA. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (internal quotation marks omitted); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination.").

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for retaliation under Title VII and the ADEA is granted.

### C. *Other Retaliation Claims*

In light of Plaintiff's pro se status, I must read the Complaint "broadly and interpret it to raise the strongest arguments it suggests." *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004). On the cover sheet of the Complaint, Plaintiff indicated that the action was brought only pursuant to Title VII for discriminatory termination and retaliation. (*See* Compl. 1–3.) However, in the first paragraph of his factual allegations, Plaintiff appears to allege a different category of retaliation claim. Specifically, Plaintiff alleges that Defendant retaliated against him "because of [his] engagement in providing information in good faith about suspected unethical or illegal activities." (*Id.* at 27, ¶ 1.) Construed broadly, this statement could be interpreted as alleging a claim of retaliatory discharge for protected whistleblowing activity in violation of § 806 of

---

[6] Plaintiff responds to these assertions only with unsupported and inapposite conjecture. (*See, e.g.*, Pl.'s 56.1 Resp. ¶ 110 ("Plaintiff believes that Mike Fogarty flying to NY from NC unannounced and unexpectedly without prior notice . . . was an act of intimidation and harassment.").)

the Sarbanes–Oxley Act of 2002 ("SOX"). *See* 18 U.S.C. § 1514A.[7] Defendant's memoranda in support of its motion for summary judgment did not include discussion of SOX or any other statute protecting internal whistleblowing activity. (*See generally* Def.'s Mem.; Def's Reply.)[8]

Accordingly, Defendant's motion for summary judgment is denied to the extent that it does not address Plaintiff's whistleblower claim.

V. **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's claims under Title VII and the ADEA is GRANTED. However, Defendant's motion is DENIED to the extent that it does not address any whistleblower claim that Plaintiff alleges in the Complaint.

If Defendant takes the position that Plaintiff has not plausibly alleged a whistleblower claim under SOX or any other relevant statute, Defendant shall move to dismiss those claims no later than six weeks after the entry of this Opinion & Order. If Defendant does not file a motion to dismiss, I will schedule a conference to develop a plan for discovery related to any whistleblower retaliation claims.

---

[7] In finding that Plaintiff has at least arguably alleged whistleblower retaliation, I do not in any way opine on whether the allegations in the Complaint are sufficient to state a claim under SOX or any other relevant statute.

[8] "Def.'s Reply" refers to the Reply Brief in Further Support of Defendant's Motion for Summary Judgment, filed January 18, 2019. (Doc. 45.)

The Clerk of Court is respectfully directed to terminate the open motion at Document 35.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge